[CB1] 

                                      COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                       NO.  2-09-052-CR

 

 

THE STATE OF TEXAS                                                                STATE

 

                                                   V.

 

DAVID WAYNE WOODARD                                                      APPELLEE

 

                                              ------------

 

          FROM COUNTY COURT AT LAW
NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction








Appellee David Wayne Woodard was charged with the
misdemeanor offense of driving while intoxicated.  The State appeals the trial court=s order granting Appellee=s motion to suppress evidence.  In one issue, the State argues the trial
court erred by not recognizing the community caretaking function of a police
officer in responding to a reported automobile accident and by failing to
recognize a police officer may pose questions to a fellow citizen without
justification.  We reverse and remand. 

II. Background

Shortly after 10 p.m. on May 17, 2008,
Burkburnett police officers John Warner, Jr. and Donald Morgan responded to a
dispatch call regarding a car in a ditch at the Y-shaped convergence of Berry
Street and the Oklahoma Cut-Off. An anonymous phone call prompted the dispatch,
but the caller provided no additional details regarding the accident, the
vehicle, the location, or the car=s passengers. 


Officer Warner received a second dispatch call as
he drove to the accident scene.  The dispatch
reported the anonymous caller=s observation of the vehicle=s driver, wearing a dark T-shirt and jeans and
walking approximately six blocks north of the accident scene.  The second dispatch provided no other details
regarding the driver=s
attire, physical features, or direction. 








More than a quarter mile from the wrecked car,
and more than six blocks west of the last reported location of the driver,
Officer Warner saw Appellee wearing a dark T-shirt and jeans walking on the
public sidewalk.  Officer Warner did not
initially observe Appellee breaching the peace, walking illegally, or behaving
in a manner that endangered himself or others. 
Officer Warner testified he did not believe Appellee was publicly
intoxicated when he first saw him, nor did he have reason to make a Acommunity caretaking stop@ of Appellee. 
Officer Warner stated that he just stopped to ask Appellee a few
questions and admitted he had a Ahunch@ that Appellee was the driver of the wrecked
vehicle because his attire matched the vague description provided by the
anonymous caller.  

Immediately upon encountering Appellee, Officer
Warner inquired whether Appellee was involved in a collision at Oklahoma
Cut-Off and North Berry. Appelleet admitted that he had been driving the wrecked
vehicle.  Officer Warner described
Appellee=s response of AYes@ as Afreely volunteered.@  During
the encounter, Appellee stated he was drunk and should not have been driving.
Officer Warner said that based on his knowledge, training, and experience, Appellee
appeared to be intoxicated. 








About the time Officer Warner encountered
Appellee, Officer Morgan found a vehicle nosedown in a drainage ditch near the
location provided in the dispatch. 
Officer Morgan looked in the car=s windows and saw no passengers. Upon noticing
damage to the front of the vehicle, and believing the accident may have caused
injuries, Officer Morgan followed the police department=s standard procedure for identifying the driver
of a wrecked, unoccupied vehicle by opening the driver=s door to locate a driver=s license, insurance card, or other form of
identification.  Officer Morgan=s intent was not to investigate for criminal
activity, but to determine the identity of the car=s owner so the driver might be located and treated
for any possible injuries.  During the
vehicle search, Officer Morgan found an insurance card and two beer cansCone empty and one that was cold and
three-quarters empty.  Officer Morgan
informed Officer Warner of his findings and remained with the vehicle until it
was towed. Officer Morgan admitted he did not know when the beer was consumed,
who drove the vehicle, the number of passengers in the vehicle, or when the
accident occurred.  

After receiving Officer Morgan=s report and observing Appellee, Officer Warner
asked Appellee to perform standardized field sobriety testing and, based on
Appellee=s performance, determined Appellee was
intoxicated.  Appellee consented to take
a breath test, and Officer Warner placed Appellee in custody. Officer Warner
testified that, based on the totality of the circumstances, he believed
Appellee drove the vehicle Officer Morgan found in the ditch.  Officer Warner admitted he did not possess
personal knowledge that Appellee drove the car, drove while intoxicated, or consumed
the beers before the wreck. 








The State indicted Appellee for the misdemeanor
offense of driving while intoxicated. 
Appellee filed a motion to suppress evidence, claiming a lack of
probable cause, consent, and that Athe scope of the seizure and search exceeded that
authorized by law.@  Following an evidentiary hearing, at which
only Officers Warner and Morgan testified, the trial court granted Appellee=s motion and entered findings of fact and
conclusions of law.[1]


III. Standard
of Review








We review a trial court=s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
In reviewing the trial court=s decision, we do not engage in our own factual
review.  Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857,
861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to
the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on
an evaluation of credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s rulings on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652B53.








Stated another way, when reviewing the trial
court=s ruling on a motion to suppress, we must view
the evidence in the light most favorable to the trial court=s ruling.  Wiede,
214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App.
2006).  When the trial court grants a
motion to suppress and files accompanying findings of fact and conclusions of
law, and the sole witness at the motion to suppress hearing is the arresting
officer, the only question before us is whether the trial court properly
applied the law to the facts it found.  See
State v. Gray, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); Guzman,
955 S.W.2d at 86B87,
89.  We must uphold the trial court=s ruling if it is supported by the record and
correct under any theory of law applicable to the case, even if the trial court
gave the wrong reason for its ruling.  State
v. Stevens, 235 S.W.3d 736, 740 
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).  

IV.
Suppression of Evidence Arguments

On appeal, the State argues the trial court erred
by granting the motion to suppress because it failed to recognize (1) a police
officer=s community caretaking function of responding to
a reported automobile accident and (2) that a police officer is just as free as
any other citizen to stop and ask questions of a fellow citizen without the
need for any justification.  Appellee
contends the trial court=s
decision to suppress evidence is correct because the investigative detention of
Appellee was based on Officer Warner=s hunch after he received a dispatch relaying
information provided by an anonymous tipster. 

A. Community Caretaker
Exception Inapplicable








The community caretaking exception allows police
officers, as part of their duty to Aserve and protect,@ to stop or temporarily detain an individual whom
a reasonable person would believe is in need of help, given the totality of
circumstances.  Wright v. State, 7
S.W.3d 148, 151 (Tex. Crim. App. 1999); see Cady v. Dombrowski, 413 U.S.
433, 441, 93 S. Ct. 2523, 2528 (1973).  The
community caretaking exception is to be narrowly applied.  Wright, 7 S.W.3d at 152.  To invoke the exception, an officer=s primary motive must be concern for the
individual=s
well-being.  Corbin v. State, 85
S.W.3d 272, 277 (Tex. Crim. App. 2002). 
Determining whether an officer has properly invoked his community
caretaking function is a two-step process. 
Id.  First, the reviewing
court must determine whether the officer was primarily motivated by a community
caretaking purpose.  Id.  Second, the court must determine whether the
officer=s belief that his assistance was required was
reasonable.  Id.        

Here, the record reflects that at the time he
approached Appellee, Officer Warner (1) was unsure if a wreck existed at the
alleged location, (2) possessed no personal knowledge that Appellee had
operated the vehicle, (3) admitted the driver=s description was extremely vague, and (4) was
not concerned for Appellee=s safety. 
Moreover, the record reflects Officer Warner did not initially observe
that Appellee was endangering himself or others.  

We conclude that the trial court, as the finder
of fact and exclusive judge of credibility, could have found that Officer
Warner was not primarily motivated by community caretaking concerns when he
made the decision to pose a question to Appellee.  See id. (citing Ross, 32 S.W.3d
at 855).  Thus, we disagree with the
State that the community caretaking function permitted Officer Warner to
temporarily detain Appellee.

   








B. Consensual Encounter or
Investigative Detention?

The State also contends the trial court erred by
granting Appellee=s
motion to suppress evidence because Officer Warner=s interaction with Appellee was a consensual
encounter that permitted Officer Warner to ask Appellee questions without
having reasonable suspicion Appellee committed a crime.  We defer to the trial court=s conclusion, based on its apparent disbelief of
at least part of Officer Warner=s testimony, that the officer did not have
reasonable suspicion to stop Appellee. 
We conclude, however, that Officer Warner was justified in approaching
Appellee because the police-citizen interaction was initially a consensual
encounter.  

The Fourth Amendment to the United States
Constitution protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  A temporary detention for purposes of
investigation constitutes a seizure for Fourth Amendment purposes.  See Terry v. Ohio, 392 U.S. 1, 16, 88 S.
Ct. 1868, 1877 (1968).  However, not
every encounter between a civilian and a police officer implicates the Fourth
Amendment.  See Florida v. Bostick,
501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); Hunter v. State, 955
S.W.2d 102, 104 (Tex. Crim. App. 1997); Horton v. State, 16 S.W.3d 848,
851 (Tex. App.CAustin
2000, no pet.).  








Three categories of interactions between police
officers and citizens are recognized by the Texas Court of Criminal Appeals:
arrests, investigative detentions, and encounters.  State v. Perez, 85 S.W.3d 817, 819
(Tex. Crim. App. 2002).  Unlike investigative
detentions and arrests, which are seizures for Fourth Amendment purposes, an
encounter is a consensual interaction, which the citizen may terminate at any
time.  See Gurrola v. State, 877
S.W.2d 300, 302B03
(Tex. Crim. App. 1994); State v. Bryant, 161 S.W.3d 758, 761 (Tex. App.CFort Worth 2005, no pet.).  So long as the person remains free to
disregard the officer=s
questions and go about his business, the encounter is consensual and merits no
further constitutional analysis.  See
Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (citing California
v. Hodari D., 499 U.S. 621, 628, 111 S. Ct. 1547, 1552 (1991)).  








Law enforcement officers are permitted to
approach individuals without probable cause or reasonable suspicion to ask
questions or even to request a search.  See
Florida v. Royer, 460 U.S. 491, 497B98, 103 S. Ct. 1319, 1324 (1983);  State v. Velasquez, 994 S.W.2d 676, 678
(Tex. Crim. App. 1999); Hunter, 955 S.W.2d at 104; Johnson, 912
S.W.2d at 235; Horton, 16 S.W.3d at 851. 
Such an encounter does not require any justification on the officer=s part.  See
United States v. Mendenhall, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877
(1980); Daniels v. State, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986), cert.
denied, 479 U.S. 885 (1986), overruled on other grounds, Juarez
v. State, 758 S.W.2d 772, 780 (Tex. Crim. App. 1988).  Police officers are as free as any other
citizen to approach citizens on the street and ask for information.  State v. Garcia-Cantu, 253 S.W.3d 236,
243 (Tex. Crim. App. 2008).  Such
interactions may involve inconvenience or embarrassment, but they do not
involve official coercion.  Id.  Only when the implication arises that an
officer=s authority cannot be ignored, avoided, or ended,
does a Fourth Amendment seizure occur.  Id.









Determining whether specific facts amount to a
detention under the Fourth Amendment or a consensual police-citizen encounter Ais subject to de novo review because that is an
issue of lawCthe
application of legal principles to a specific set of facts.@[2]  Id.
at 241.  The occurrence of a consensual
encounter is determined by the totality of the circumstances and Awhether a reasonable person would feel free to
decline the officer=s
requests or otherwise terminate the encounter.@  St.
George v. State, 197 S.W.3d 806, 819 (Tex. App.CFort Worth 2006), aff=d,
237 S.W.3d 720 (Tex. Crim. App. 2007) (quoting Bostick, 501 U.S. at 436,
111 S. Ct. at 2387); State v. Murphy, No. 2-06-00267-CV, 2007 WL
2405120, at *2 (Tex. App.CFort
Worth Aug. 23, 2007, no pet.) (mem. op., not designated for publication).  

 Circumstances that may indicate a
police-citizen interaction is a seizure, rather than a consensual encounter,
include the threatening presence of several officers, the officer=s display of a weapon, physical touching of the
citizen by the officer, the officer=s words or tone of voice indicating that
compliance with the officer=s requests might be compelled, or flashing lights
or blocking a suspect=s
vehicle.  Mendenhall, 446 U.S. at
554, 100 S. Ct. at 1877; Juarez v. State, Nos. 14-05-00196-CR,
14-05-00197-CR, 14-05-00198-CR, 2006 WL 300409, at *2 (Tex. App.CHouston [14th Dist.] Feb. 9, 2006, no pet.) (not
designated for publication); see State v. Carter, No. 02-04-00063-CR, 2005
WL 2699219, at *2 (Tex. App.CFort Worth Oct. 20, 2005, pet. ref=d) (mem. op., not designated for
publication).  Absent this type of
evidence, however, otherwise inoffensive conduct between a citizen and a police
officer cannot, as a matter of law, amount to a seizure of that person. Mendenhall,
446 U.S. at 555, 100 S. Ct. at 1877; Murphy, 2007 WL 2405120, at
*2.   

 








C. A Consensual Encounter
Occurred 








In Murphy, a similar case, we reversed a
trial court=s
granting of a motion to suppress evidence and held the police officer=s initial approach in that case was a consensual
encounter that escalated into an investigative detention supported by
reasonable suspicion.  2007 WL 2405120,
at *2.  In that case, the police officer
approached Murphy as he tried to push his motorcycle up an embankment in a city
park, asked Awhat
had happened,@
and Ainformed him that it was unlawful for him to
operate the motorcycle within the park.@  Id.
at *1.  Murphy admitted that Athe motorcycle belonged to him, . . . that he was
the one [who] was riding it,@ and that he was dizzy.  Id.  As the officer helped push the motorcycle up
the embankment, the officer suspected that Murphy was intoxicated after
noticing that he had bloodshot, watery eyes, was disoriented, had slurred
speech, and had the smell of alcohol on his breath.  Id. 
The officer then administered field sobriety tests and arrested Murphy
for driving while intoxicated.  Id.  We concluded, based on the totality of
circumstances, that the officer was justified in approaching Murphy and that
the initial interaction was a consensual encounter because the officer had
merely engaged Murphy in a conversation, informed him of a law of which he
might be unaware, and helped him with his motorcycle.  Id. at *3.  There was no evidence that the officer
displayed his weapon, physically threatened Murphy, used harsh language or
touch, activated flashing lights, or prevented Murphy from leaving, and no
evidence existed that Murphy did not feel free to leave.  Id. 
We further concluded that the facts learned in the initial consensual
encounter provided ample specific, articulable facts that led the officer
reasonably to conclude that Murphy had been engaged in criminal activity.  Id. 

Like in Murphy, the evidence in this case
shows that, initially, Officer Warner merely engaged Appellee in
conversation.  Officer Warner was
justified in approaching Appellee on a public sidewalk and asking him a few
questions; he needed no articulable suspicion to engage Appellee in this manner.  See, e.g., Ashton v. State, 931 S.W.2d 5,
7 (Tex. App.CHouston
[1st Dist.] 1996, pet. ref=d) (holding no investigatory detention occurred,
and therefore no reasonable suspicion needed, when officer approached appellant
sitting in a parked car in a public place and asked her to roll down her
window); Roe v. State, 738 S.W.2d 378, 381 (Tex. App.CCorpus Christi 1987, pet. ref=d) (holding officer=s actions in approaching suspect=s parked van, asking for and examining his driver=s license, and speaking to him did not rise to
the level of detention); Thomas v. State, 633 S.W.2d 334, 335 (Tex. App.CDallas 1982, pet. ref=d) (holding investigatory detention began after
police smelled marijuana, not when police officers initially stopped their car
in front of car in which defendant was sitting).  








Appellee argues that Officer Warner needed
reasonable suspicion to approach and question him and that a Ahunch@ that Appellee was the driver of the wrecked
vehicle was not sufficient to form a reasonable suspicion.  The fact that Officer Warner had a Ahunch@ Appellee was the driver of the wrecked vehicle
does not preclude the interaction from being a permissible consensual
encounter.  See Hunter, 955 S.W.2d
at 104 (holding a reasonable, innocent person would feel free to leave when two
plain clothes officers approached and questioned suspect about travel plans and
whether he was carrying drugs, told suspect they were conducting a Anarcotics interview,@ and requested to search suspect=s bag); Murphy, 2007 WL 2405120, at *2; State
v. Salinas, No. 12-02-00275-CR, 2004 WL 306128, at *3 (Tex. App.CTyler Feb. 18, 2004, no pet.) (mem. op., not
designated for publication) (noting officer=s questions about suspects= involvement in destruction of property would not
communicate to the individuals that they were not free to leave).  








Here, the trial court erroneously applied the law
to the facts and concluded that A[t]he interaction between Officer John Warner and
David Woodard was not a consensual encounter because a reasonable person in Mr.
Woodard=s situation would not have believed that he was
free to leave when Officer Warner decided to stop him.@  There is
no evidence in the record of Appellee=s subjective perception that he did not feel free
to leave.  See Garcia-Cantu,
253 S.W.3d at 249 n.48.  The record is
devoid of a threatening presence of numerous officers around Appellee, Officer
Warner=s display of any weapon, any physical touching of
Appellee by Officer Warner, Officer Warner=s words or tone of voice indicating that
compliance with his requests might be compelled, or flashing lights or blocking
Appellee=s path.  No
evidence indicates that Officer Warner=s mere approach interfered with Appellee=s freedom of movement or caused inconvenience and
loss of time, nor that the officer=s initial questioning constituted an
unconstitutional seizure.  See Stewart
v. State, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980) (holding a consensual
encounter initially occurred when officers approached a parked van and shined
their spotlights into the van, but it became a reasonable and valid
investigatory detention when the driver exited the vehicle and the officers
smelled marijuana).  Nor do the facts
indicate Officer Warner manifested an intent to formally detain Appellee until
questions gave rise to further, articulable facts that, in light of Officer
Warner=s experience and training as a police officer,
would create a reasonable suspicion that Appellee had been driving while
intoxicated.  See Garcia-Cantu,
253 S.W.3d at 244 n.41; see, e.g., Roe, 738 S.W.2d at 381; Thomas,
633 S.W.2d at 335. 








Similar to the facts in Murphy, the
encounter between Appellee and Officer Warner escalated into an investigative
detention only after Officer Warner had reasonable suspicion that Appellee had
been driving while intoxicated.  Murphy,
2007 WL 2405120, at *2; see, e.g., Roe, 738 S.W.2d at 381; Thomas,
633 S.W.2d at 335.  Officer Warner
testified that, after approaching Appellee, he observed Appellee=s bloodshot and glazed eyes, unsteadiness,
staggering walk, and odor of alcohol on his breath and body.  These observations, Appellee=s admission that he drove the wrecked vehicle
while intoxicated, and Officer Morgan=s report of finding a cold, partially consumed
open container in the wrecked vehicle created ample, specific, articulable
facts that led Officer Warner reasonably to conclude Appellee had been driving
while intoxicated.  Officer Warner did
not perform field sobriety tests until after he had a reasonable suspicion
Appellee had been driving while intoxicated. 
Finally, Appellee was arrested only after he failed the field sobriety
tests.  

D. Consensual Encounter Does Not Require Reasonableness Burden








Appellee further contends the State failed to
carry its burden of proof to establish a consensual encounter between Officer
Warner and Appellee.  To suppress
evidence because of a Fourth Amendment violation, the State bears the burden of
establishing the reasonableness of a warrantless detention after the accused
individual meets the initial burden of producing evidence rebutting the
presumption of proper police conduct by producing evidence of a warrantless
seizure or arrest.  Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005). 









However, a consensual encounter is not a
warrantless detention, seizure, or arrest.  Velasquez, 994 S.W.2d at 678.  Thus, it does not violate the Fourth Amendment
and requires no articulable suspicion or probable cause by which reasonableness
must be determined.  Id.; St.
George, 197 S.W.3d at 819; see Royer, 460 U.S. at 497B98 (1983).[3]  AAn officer needs no justification for a
consensual encounter, which triggers no constitutional protections.@  Pennywell
v. State, 127 S.W.3d 149, 152 (Tex. App.CHouston [1st Dist.] 2003, no pet.).         Proper police conduct is presumed.  See Amador, 221 S.W.3d at 672B73.  To suppress
evidence because of an alleged Fourth Amendment violation, the defendant bears
the initial burden of producing evidence that rebuts the presumption of proper
police conduct.  Id. (citing Russell
v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986); Derichsweiler v.
State, 301 S.W.3d 803, 808 (Tex. App.CFort Worth, pet. filed); Morris v. State,
50 S.W.3d 89, 94 (Tex. App.CFort Worth 2001, no pet.).  The dissent appears to overlook the first
prong of this presumption: a defendant must establish that (1) a search or
seizure occurred (2) without a warrant.  See
Amador, 221 S.W.3d at 672; Davidson v. State, 249 S.W.3d 709, 717B18 (Tex. App.CAustin 2008, no pet.) (citing Russell, 717
S.W.2d at 9).  Once the defendant has
made this showing, the burden of proof shifts to the State, which is then
required to establish that the search or seizure was conducted pursuant to a
warrant or was reasonable.  Id. at
673; Torres, 182 S.W.3d at 902; Ford, 158 S.W.3d at 492.  

Here, the trial court erroneously applied the law
to the facts in concluding that AOfficer John Warner failed to articulate specific
facts that supported a reasonable suspicion that [Woodard] had committed any
criminal offense before [he] performed the investigative detention of
Mr. Woodard on May 17, 2008.@ [Emphasis added.]  There is no evidence that Appellee was Aseized@ prior to Officer Warner asking Appellee to
perform standardized field sobriety testing. 
Thus, we presume that up to the point that Officer Warner requested
Appellee to perform field sobriety testing, Ano intrusion upon constitutionally protected
rights had occurred.@  See Terry, 392 U.S. at 20 n.16, 88 S.
Ct. at 1879 n.16 (holding that because the record was unclear Awhether any . . . >seizure= took place@ before an officer initiated physical contact to
conduct a search, the court assumed no violation of any constitutionally
protected rights). 








Because Appellee=s detention began when Officer Warner asked him
to perform standardized field sobriety testing, not when Officer Warner
initially approached and posed questions to Appellee, Officer Warner did
articulate specific facts that supported a reasonable suspicion that [Appellee]
had committed a criminal offense before detaining Appellee.  Specifically, Officer Warner testified that,
after approaching Appellee, he observed Appellee=s bloodshot and glazed eyes, unsteadiness,
staggering walk, and odor of alcohol on his breath and body.  These observations, Appellee=s admission that he drove the wrecked vehicle
while intoxicated, and Officer Morgan=s report of finding a cold, partially consumed
open container in the wrecked vehicle created ample, specific, articulable
facts that led Officer Warner reasonably to conclude Appellee had been driving
while intoxicated.   








We conclude that Officer Warner=s initial approach and questioning of Appellee
were permitted because that conduct did not constitute an investigative
detention, but was instead a consensual encounter.[4]  As we previously explained, this consensual
encounter between Officer Warner and Appellee transitioned to a warrantless
detention and arrest only after reasonable suspicion became apparent to Officer
Warner through the totality of the circumstancesCenabling the State to fulfill its burden of
establishing the reasonableness of Appellee=s warrantless detention and arrest.   See Ford, 158 S.W.3d at 492. 

E. Evidence Admissible
After a Valid Arrest

Appellee argues that because Officer Warner did
not see Appellee driving while intoxicated, the officer=s arrest of Appellee was unlawful and Athe evidence which the State seeks to introduce
was the fruit of the unlawful . . . arrest.@  

The code of criminal procedure provides that A[a] peace officer may arrest an offender without
a warrant for any offense committed in his presence or within his view.@  Tex. Code
Crim. Proc. Ann. art. 14.01(b) (Vernon 2005). 
The test for probable cause for a warrantless arrest under this
provision is A[w]hether
at that moment the facts and circumstances within the officer=s knowledge and of which he had reasonably
trustworthy information were sufficient to warrant a prudent man in believing
that the arrested person had committed or was committing an offense.@  Beverly
v. State, 792 S.W.2d 103, 105
(Tex. Crim. App. 1990); see Astran v. State, 799 S.W.2d 761, 764 (Tex.
Crim. App. 1990) (noting that in making an article 14.01 arrest, officer may
rely on other officers and on lay citizens in determining that probable cause
exists to believe an offense was committed). 
Thus, 








although the statute states that the offense must
be one that is committed within the officer=s presence or
view, an officer can make a warrantless arrest based on an offense that was
committed at an earlier time and further, the officer does not even have to
personally see the offense committed before the warrantless arrest is justified
under article 14.01(b). 
 

Akins
v. State, 202 S.W.3d 879, 889 (Tex.
App.CFort Worth 2006, pet. ref=d). 








Here, the trial court erroneously applied the law
to the facts and concluded that A[b]ecause no officer saw [Appellee] driving or
otherwise operating a motor vehicle, Warner=s warrantless arrest of [Appellee] on May 17,
2008, was not proper.@  Instead, the record evidence demonstrates probable
cause based on Officer Warner=s personal observations that Appellee appeared
intoxicated and failed the field sobriety tests, coupled with the officer=s personal knowledge from Appellee=s admission that he had driven the wrecked
vehicle while Adrunk@ and from Officer Morgan=s informing him that he found  a cold can of beer in the wrecked vehicle.[5]
 See Beverly, 792 S.W.2d at 104B05 (Tex. Crim. App. 1990); see also Tex.
Penal Code Ann. ' 49.04(a)
(Vernon 2003) (AA
person commits the offense of driving while intoxicated if the person is
intoxicated while operating a motor vehicle in a public place.@). Thus, the evidence demonstrates probable cause
to arrest Appellee for driving while intoxicated based upon the officer=s personal knowledge and personal observations of
Appellee=s behavior. 
See Beverly, 792 S.W.2d at 104B05; Akins, 202 S.W.3d at 889.[6]  Accordingly, we hold that Officer Warner=s arrest of Appellee was lawful.








We agree with the State=s argument that a police officer may pose questions
to a fellow citizen without justification. 
Officer Warner=s
initial approach and questioning of Appellee was consensual, and this
consensual encounter escalated into an investigative detention supported by
reasonable suspicion that Appellee had been driving while intoxicated.  The transaction, from initial questioning by
Officer Warner through Appellee=s arrest, was lawful.  Thus, the trial court erred by granting
Appellee=s motion to suppress evidence.

V. Conclusion

Having sustained the State=s issue, we reverse the trial court=s order and remand the case for further
proceedings consistent with this opinion.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

 

DAUPHINOT,
J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  April 1, 2010

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.  2-09-052-CR

 

 

THE STATE OF TEXAS                                                                             STATE

 

                                                             V.

 

DAVID WAYNE WOODARD                                                                  APPELLEE

 

                                                       ------------

 

              FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                                       ------------

 

                                         DISSENTING OPINION

 

                                                       ------------

The trial court
granted Woodard=s motion to suppress.  The State is the appellant.  Our mandate is clear:  

If
the trial court=s ruling regarding a motion to suppress
is reasonably supported by the record and is correct under any theory of law
applicable to the case, the reviewing court must affirm.[1]




 








Consequently, in this case we may reverse
the trial court only if we replace the trial judge=s determinations
of credibility with our own or if, deferring to his determinations of
credibility and viewing all the evidence only in the light most favorable to
the trial court=s ruling, we conclude that there is no
theory of law supported by the record as viewed by the trial court that could
support the trial court=s ruling. 


Certain well
established rules govern our appellate review:

In a motion to suppress hearing, the trial court is the
sole trier of fact and judge of the credibility of the witnesses and the weight
to be given their testimony.  
Accordingly, the judge may believe or disbelieve all or any part of a
witness=s testimony, even if that testimony
is not controverted.  This is so because
it is the trial court that observes first hand the demeanor and appearance of a
witness, as opposed to an appellate court which can only read an impersonal
record.[2]
 








The trial court
filed written findings of fact and conclusions of law, clearly setting out the
trial court=s determinations of credibility.  Again, the law is well established:  AIn reviewing a
trial court=s ruling on a motion to suppress,
appellate courts must view all of the evidence in the light most favorable to
the trial court=s ruling.@[3]  When, as here,

[i]n
a motion to suppress hearing where the only evidence presented is the testimony
of the arresting officer (which, if believed, adds up to probable cause) . .
.  [t]he trial court may have disbelieved
the officer on at least one material fact, or the trial court may be in a
situation in which it does not know what exactly the facts are, but it does
know (on the basis of demeanor, appearance, and credibility) that they are not
as the witness describes.  In this situation,
the appellate court does not necessarily have a set of historical facts to
which it may apply the law.  The
determination of probable cause rests entirely on the credibility of the lone
witness.  This scenario is a mixed
question of law and fact, the resolution of which turns on an evaluation of
credibility and demeanor.  The proper
standard of review is therefore the second category of Guzman, Aalmost total deference@ to the trial ruling.[4]
 

Even if the trial court does not make
explicit findings of fact, 








the
appellate court infers the necessary factual findings that support the trial
court=s ruling if the record evidence
(viewed in the light most favorable to the ruling) supports these implied fact
findings.  Thus, we afford almost total
deference to a trial judge=s determination of the historical facts that the record
supports, especially when his implicit factfinding is based on an evaluation of
credibility and demeanor.  This same
highly deferential standard applies regardless of whether the trial court has
granted or denied a motion to suppress evidence.  Thus, the party that prevailed in the trial
court is afforded the strongest legitimate view of the evidence and all
reasonable inferences that may be drawn from that evidence.[5]  

 

Although Awhether a given
set of historical facts amounts to a consensual police‑citizen encounter
or a detention under the Fourth Amendment is subject to de novo review
because that is an issue of lawCthe application of
legal principles to a specific set of facts,@[6] we do not re-write the facts in order to
legitimate the police-citizen contact under the guise of employing a
presumption of correct police activity. 
A presumption of correct police activity is not a presumption that any
witness is telling the truth.  A
presumption of correct police activity is not a mandate that the trial judge
must automatically believe witnesses who testify to justify police
activity.  We cannot and must not
substitute our determination of the facts and the credibility of the witnesses
in order to achieve the result that we believe the trial court should have
reached.

We do know that
the trial court believed Officer Warner when he testified that Woodard was not
so intoxicated that he constituted a threat to himself or to others.  We also know that the trial court believed
Officer Warner when he testified that Woodard was walking without staggering or
otherwise indicating that he was intoxicated.








This case is
controlled in part by article 14.01 of the Texas Code of Criminal Procedure and
the reasoning of State v. Steelman.[7]  Article 14.01 provides, 

(a) A peace officer or any other person, may, without a
warrant, arrest an offender when the offense is committed in his presence or
within his view, if the offense is one classed as a felony or as an offense
against the public peace.

 

(b) A peace officer may arrest an offender without a
warrant for any offense committed in his presence or within his view.[8]












In upholding the
trial court=s suppression of evidence, the Steelman
court held that the arresting officers did not have probable cause to
believe that Steelman had committed an offense in their presence, even though
they had received a tip that someone at his residence was dealing drugs and
officers personally smelled the odor of marijuana in the air when Steelman
opened the front door.[9]  The officers had no personal knowledge
regarding who was smoking or possessing marijuana.[10]  Consequently, the officers had no authority
to make a warrantless arrest.[11]  Nor could the State justify the officers= actions based on
a theory not relied on in the trial court.[12]

In the case now
before this court, no officer observed Woodard commit any offense.  Information about the car in the ditch came
from a person who Adid not provide any contact information
(name, address, telephone number, date of birth, etc.) to the dispatcher so
that the tipster could be located at a later date.@  The anonymous tip did not satisfy the
requirement that the officers personally view the commission of the misdemeanor
in order to justify the warrantless misdemeanor arrest.[13]  








The majority, in
setting aside the trial court=s finding of facts
and determinations of credibility, relies on two cases in which the arresting officer
did not see the defendant commit the misdemeanor DWI offense for which he
arrested the defendant.[14]  Because the officer in each case testified
that he observed the offense of public intoxication, the cases hold that an
officer who sees a person commit the offense of public intoxication may
properly arrest that person for public intoxication even though the officer
believes he is arresting for DWI; assigning the wrong name to the offense does
not invalidate the arrest.[15]

But there are two
problems with the majority=s relying on this
line of cases in reversing the trial court=s determinations
of credibility of facts and of law. 
First, the State did not argue to the trial court that Officer Warner observed
Woodard commit the offense of public intoxication, and the State did not argue
that Officer Warner could have arrested Woodard for public intoxication.  The State is the appellant.  This court cannot reverse the trial court=s ruling on a
ground not raised by the appealing party below.[16]

The second problem
with the majority=s attempt to set aside the trial court=s determinations
of credibility of facts and of the law is that there is no evidence that
Officer Warner observed Woodard commit the offense of public intoxication, but
there is affirmative evidence that Officer Warner did not observe Woodard
commit the offense of public intoxication. 
A person commits the offense of public intoxication only when Athe person appears
in a public place while intoxicated to the degree that the person may endanger
the person or another.@[17]








Officer Warner
testified, 

Q.      And
there was nothing about the way that Mr. Woodard was walking that was illegal,
correct?

 

A.      No,
sir, nothing illegal.

 

Q.      All
right.  In other words, he wasn=t walking in the street in a manner
which was dangerous to other people?

 

A.      No,
sir.  As a matter of fact, I believe he
was walking on a sidewalk, a public sidewalk.

 

.
. . 

 

Q.      So he certainly wasn=t endangering
anyone?

A.      No, sir, he was not.

Q.      He wasn=t endangering
himself?

A.      No, sir, he was not.

Q.      So
you didn=t think he was committing the
offense of public intoxication at that time, correct?

 

A.      No,
sir, I did not.[18]












Officer Warner specifically
denied that he personally observed Woodard commit the offense of public
intoxication.  The State, therefore, did
not rely in the trial court on the theory that Officer Warner personally
observed Woodard commit the offense of public intoxication.  The trial court believed that Officer Warner
was telling the truth.

Again, our mandate
is

to
uphold the trial court=s ruling on appellant=s motion to suppress if that ruling
was supported by the record and was correct under any theory of law applicable
to the case.  That rule holds true even
if the trial court gave the wrong reason for its ruling.  Our task, then, is to determine whether the
trial court could have reasonably denied appellant=s motion to suppress given the
record evidence and given the applicable federal and state law.[19]

 

The same mandate
applies when the trial court grants a motion to suppress.[20]  AWe must affirm the
granting of the motion to suppress if it is correct under any theory of law
applicable to the case, even if not raised by appellee in the trial court.@[21]  We
must do so, in part, because 








[i]n
a motion to suppress hearing, the trial court is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Accordingly, the judge may
believe or disbelieve all or any part of a witness=s testimony, even if that testimony
is not controverted.  This is so because
it is the trial court that observes firsthand the demeanor and appearance of a
witness, as opposed to an appellate court which can only read an impersonal
record.[22]

 

The trial court
entered findings of fact and conclusions of law that clearly indicated that no
officers observed Woodard commit a misdemeanor offense in their presence.  At no time has the State claimed, and there
is no evidence that there was any suspicion, reasonable or otherwise, that
Woodard committed a felony.

Additionally,
there is neither a videotape nor an audio recording of Woodard=s detention or his
purported admissions, and the record contains no indication that Officer Warner
complied with article 2.133 or article 2.135 of the Texas Code of Criminal
Procedure.[23]  








The majority
states that Woodard did not disprove Officer Warner=s representation
that the encounter was consensual.  The majority,
however, improperly places the burden of proof on the citizen detained rather
than on the State.  The law is well
established that while the person seized originally bears the burden of proof
at the suppression hearing, once the defendant establishes the fact that his
arrest was warrantless, the Aburden then
shift[s] to the State to establish that the seizure was conducted pursuant to a
warrant or was reasonable.@[24] 
This burden is a burden of persuasion.

It is uncontested
that Woodard was detained and then arrested without a warrant.  Contrary to the majority=s statement, there
is no presumption of proper police conduct to justify the warrantless
detention.  There was no such presumption
for Woodard to overcome.  The burden was
on the State to justify the warrantless detention and arrest.  The State attempted to do this by persuading
the trial court that the probable cause to arrest was lawfully obtained as the
result of a consensual encounter that included voluntary responses to the
officer=s questions after
the officer stopped Woodard, who was walking down the sidewalk.  The officer admitted that he stopped Woodard
and questioned him, but the officer claimed that the answers were volunteered.[25]  He also admitted that he required Woodard to
perform field sobriety tests after Woodard responded to his questions.








Because the State
is appealing, reversal is required only if the trial court abused its
discretion by failing to uphold the detention and arrest on a ground proved and
argued by the State in the trial court. 
The Texas Court of Criminal Appeals has explained this well established
rule:

Ordinary notions of procedural default should apply equally
to the defendant and the State. 
Therefore we hold that in cases in which the State is the party
appealing, the basic principle of appellate jurisprudence that points not
argued at trial are deemed to be waived applies equally to the State and the
defense.  In the instant case, once
Appellee established standing in the premises to be searched and that the
search was conducted without a warrant, he satisfied his burden of establishing
his Fourth Amendment claim and the burden shifted to the State to establish an
exception to the warrant requirement. 
The only theory argued by the State and presented by the facts was that
the search was a proper inventory.  The
trial court=s ruling was specifically limited
to the facts and legal arguments presented to it.  Thus the trial court cannot be held to have
abused its discretion in ruling on the only theory of law presented to it.[26]  

 

The burden was not
on Woodard to prove that his detention and arrest were not reasonable.  It is uncontested that he was arrested and
prosecuted for misdemeanor DWI.  The
trial court so found.  No officer
observed Woodard commit any misdemeanor offense.  The trial court so found.








Although courts
speak of a person=s being free to leave when a police
officer approaches him, courts also hold fairly regularly that walking or
running away when an officer approaches provides reasonable suspicion for the
officer to detain the person.  It is,
indeed, a lose, lose situation for any person a police officer wants to speak
to.  He is free to leave, unless he
leaves.  When the officer approached Neal
in Neal v. State, Neal ran when the officer asked him for
identification.[27] 
Running was a suspicious circumstance.[28]  In Clarke v. State, this court held
that the officer lawfully detained the defendant because he matched the
description of a white male with large thighs and buttocks wearing dark shorts
and a white t-shirt, and AClarke=s activity was not
as consistent with innocent activity as with criminal activity when he ran away
from the officer.@[29]  In Guzman v. State, a drug dealer
pointed out a person who, he reported to the police officer, had some heroin.[30]  As the officer approached him, Guzman walked
away and appeared to swallow.  These
actions created both reasonable suspicion and an exigent circumstance
justifying the officer=s seizing Guzman.[31]








In Johnson v.
State,[32]
the defendant ran when the police appeared. 
Although they saw no offense and had no report of any offense, the
officers chased him and yelled for him to stop. 
Because he did not yield to their show of authority, there was no seizure,
although they chased him down until they actually caught him.[33]  By the time they tackled him, they had
reasonable suspicion to detain him for questioning because they saw him
carrying something purple and thought he might have a gun, and he had acted suspiciously
by running.  The Johnson courts
followed the mandate of California v. Hodari, D.[34]  Perhaps, a person is free to walk slowly away
from a consensual encounter, but not to run or to walk quickly away.  Running or walking too fast creates reasonable
suspicion.

But in the case
now before this court, Woodard did not walk away.  The State therefore did not and could not
rely on a Awalking away@
justification.  








The trial court=s factual
determinations are supported by the record, and we may not disturb them.  Nor may this court substitute its
determinations of credibility for those of the trial court.  And this court is bound to consider only the
grounds for affirming the detention that the State relied on in the trial
court.  We cannot go out and find a
ground for reversing the trial court that the State did not present to the
trial court.  The law and the facts
require that we affirm the trial court=s granting of the
motion to suppress.  Because the majority
does not, I must respectfully dissent from the majority=s thorough and
carefully written opinion.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PUBLISH

 

DELIVERED:  April 1, 2010











[1]The trial court adopted all findings of fact and conclusions of law proposed
by Appellee and added one additional conclusion of law for a total of sixty-one
findings of fact and forty-nine conclusions of law.    





[2]Thus, any of the trial court=s findings of
fact stating that an investigatory detention occurred are actually conclusions
of law reviewable by this court considering the totality of circumstances and
viewing the evidence in the light most favorable to the trial court=s ruling.  See Wiede,
214 S.W.3d at 24; Kelly, 204 S.W.3d at 818; Gray, 158 S.W.3d at
469; see also Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997);
State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.CFort Worth 1995, writ ref=d).    





[3]A[L]aw enforcement officers do not violate the Fourth Amendment by
merely approaching an individual on the street . . . , by putting some
questions to him if the person is willing to listen, or by offering in evidence
. . . his voluntary answers to such questions.@  Gearing v. State, 685
S.W.2d 326, 328 (Tex. Crim. App. 1985) (quoting Royer, 460 U.S. at 497,
103 S. Ct. at 1324), overruled on other grounds by Woods, 956 S.W.2d at
38.





[4]At the hearing on the motion to suppress, the State argued Officer
Warner did not need any reasonable suspicion or probable cause to talk to
Appellee.  Because the consensual encounter
theory was presented to the trial court and preserved for our review, we may
reverse the judgment on this theory.  See
State v. Bailey, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006).





[5]Although the trial court=s findings of
fact do not reference this testimony, this is not a case in which we must imply
that the trial court did not believe the officers= testimony.  See State
v. Sheppard, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008); cf. Ross,
32 S.W.3d at 856B57 (noting that when trial court grants motion to suppress without
providing explanation where only evidence is officer=s testimony, trial court may have disbelieved officer on at least one
material fact or may have found that the testimony, while credible, did not
establish probable cause).  The record does
not suggest that the trial court did not believe the officers= testimony.  See Sheppard,
271 S.W.3d at 286.  Instead, the trial
court=s findings and conclusionsCwhich were
drafted by Appellee=s attorneyCshow that the trial court concluded that the facts, as testified to by
the officers, did not constitute probable cause.  See Ross, 32 S.W.3d at 856B57.





[6]See also Kelley v. State, No.
02-06-339-CR, 2008 WL 110517, *2 (Tex. App.CFort Worth
2008, pet. ref=d) (officer=s labeling of arrest as being for DWI when he had not observed
defendant driving did not invalidate arrest because probable cause existed for
public intoxication arrest) (citing Warrick v. State, 634 S.W.2d 707,
709 (Tex. Crim. App. [Panel Op.] 1982)); Reynolds v. State, 902 S.W.2d
558, 560 (Tex. App.CHouston [1st Dist.] 1995, pet.ref=d) (officer=s testimony that he arrested defendant for DWI, rather than public
intoxication, did not invalidate arrest where record supported warrantless
arrest for public intoxication).





[1]Young v. State, 283 S.W.3d 854, 873 (Tex. Crim. App.), cert. denied, 130 S. Ct.
1015 (2009) (citing Romero v. State, 800 S.W.2d 539, 543B44 (Tex. Crim. App. 1990)).





[2]State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing Garcia v. State,
15 S.W.3d 533, 535 (Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d
889, 891 (Tex. Crim. App. 1999); Allridge v. State, 850 S.W.2d 471, 492
(Tex. Crim. App. 1991), cert. denied, 510 U.S. 831 (1993); Meek v.
State, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990); Mattias v. State,
731 S.W.2d 936, 940 (Tex. Crim. App. 1987); State v. Fecci, 9 S.W.3d
212, 221 (Tex. App.CSan Antonio 1999, no pet.)). 





[3]State v. Garcia‑Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).





[3]State v. Garcia‑Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).





[4]Ross, 32 S.W.3d at 856.





[5]Garcia‑Cantu, 253 S.W.3d at 241.





[6]Id.





[7]Tex. Code Crim. Proc. Ann.
art. 14.01 (Vernon 2005); State v. Steelman, 93 S.W.3d 102 (Tex. Crim.
App. 2002).





[8]Tex. Code Crim. Proc. Ann.
art. 14.01.





[9]Steelman, 93 S.W.3d at 108.       





[10]Id.





[11]Id.





[12]Id. at 107.





[13]See Tex. Code Crim. Proc. Ann. art. 14.01.





[14]Reynolds v. State, 902 S.W.2d 558 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d); Kelley v. State, No. 02-06-339-CR, 2008 WL 110517 (Tex.
App.CFort Worth 2008, pet. ref=d) (mem. op.,
not designated for publication).





[15]Reynolds, 902 at 560 & n.3; Kelley, 2008 WL 110517, at *2.





[16]State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998).





[17]Tex. Penal Code Ann. ' 49.02(a) (Vernon Supp. 2009).





[18]I R.R. at 37B38.





[19]Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (citations omitted), cert.
denied, 541 U.S. 974 (2004).





[20]Ross, 32 S.W.3d at 855.





[21]State v. Stevens, 187 S.W.3d 565, 567 (Tex. App.CHouston [14th
Dist.] 2006), rev=d on other
grounds, 235 S.W.3d 736 (Tex. Crim. App.  2007).





[22]Ross, 32 S.W.3d at 855.





[23]Tex. Code Crim. Proc. Ann.
arts. 2.133, 2.135 (Vernon Supp. 2009).





[24]Bishop v. State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); see Sieffert v. State,
290 S.W.3d 478, 484 & n.8 (Tex. App.CAmarillo 2009,
no pet.) (quoting Bishop).





[25]I R.R. at 24.





[26]Mercado, 972 S.W.2d at 78.





[27]256 S.W.3d 264, 281 (Tex.
Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009).





[28]Id.





[29]785 S.W.2d 860, 868B69 (Tex. App.CFort Worth 1990), aff=d, 811 S.W.2d 99 (Tex. Crim. App.), cert. denied, 502 U.S. 946
(1991).





[30]955 S.W.2d 85 (Tex. Crim.
App. 1997).





[31]Id. at 91B92.





[32]J864 S.W.2d 708, 715B16 (Tex. App.CDallas 1993) (Johnson I), aff=d, 912 S.W.2d 227 (Tex. Crim. App. 1995) (Johnson
II).





[33]Johnson II, 912 S.W.2d at 235; Johnson I, 864 S.W.2d at 715B16.





[34]499 U.S. 621, 626B28, 111 S. Ct. 1547, 1551 (1991).















 [CB1]Majority
opinion by Justice Gardner; Dissenting opinion by Justice Dauphinot